## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**YESENIA RIVERA**,

      Plaintiff,

v.                          Case No: 8:24-cv-01450-WFJ-NHA

**THE CSI COMPANIES INC.**,

      Defendant.

_____/

## <u>ORDER</u>

Before the Court is Defendant the CSI Companies Inc.'s ("CSI" or the "Defendant") Motion to Dismiss the Complaint. Dkt. 14. Plaintiff Yesenia Rivera ("Ms. Rivera" or the "Plaintiff") has filed a Response in Opposition. Dkt. 18. Upon careful consideration, the Court concludes that the Complaint is sufficient to withstand dismissal.

## BACKGROUND

On or about March 2022, Ms. Rivera began working at CSI, a company providing medical consultants to hospitals, for approximately one year before her termination by Defendant. Dkt. 1 ¶¶ 8-9, 86. Ms. Rivera alleges that a couple of weeks into her employment, she began to receive "unwarranted and unwelcome sexual advances" from a coworker named Michael Brown ("Brown"). *Id.* ¶ 11. The

first instance of sexual harassment began "sometime around mid-to-end March 2022," when "Brown told Rivera that the CSI Team Leads sleep with females and promises them additional hours if they will sleep with them." *Id.* ¶ 12-15. In the "following day[s]," Ms. Rivera alleges that Brown made several inappropriate comments, such as "you know that new girl Yessie, I would like to lay her down on the bed and eat her p***y cause you can tell she has good sweet p***y" and "there's a new girl here and you have to see her. She has a cute face and a fat a**." *Id.* ¶ 21.

The second instance of harassment began "several weeks later" when Brown and Ms. Rivera were assigned to the same hospital. *Id.* ¶¶ 27-28. During this incident, Brown and Msugh Tuse (also known as "Soup") blocked Ms. Rivera from leaving the hospital cafeteria and questioned Plaintiff on "why girls get offended when you tell them they have a cute face and fat a**." *Id.* ¶¶ 32-33. "The next day," Plaintiff alleges she told her Team Lead Starr Gross ("Gross") about the incident, but Gross informed Ms. Rivera that "she should not have caused a scene" and that "since Brown and Soup have been with CSI for many years, the company would always believe them and not someone so new." *Id.* ¶¶ 41-54. Further, Plaintiff alleges Gross even told her that "if she found Brown attractive, she wouldn't mind the unwarranted sexual comments that he had been making against her." *Id.* ¶ 46. "The following day," Gross, Brown, and Soup accused Ms. Rivera of contacting CSI's human resources department ("CSI HR") after a company-wide e-mail was

sent out reminding employees about its policy on sexual harassment in the workplace. *Id.* ¶¶ 48-49. These coworkers allegedly threatened Plaintiff saying, "this will get bad, just wait and see". *Id.* ¶ 50.

Ms. Rivera eventually contacted CSI's HR department and talked with Alicia Clough ("Clough"), VP of HR. *Id.* ¶ 53. On an unspecified Monday, Ms. Rivera met with Clough, informed her of the harassment, and provided video footage of prior incidents. *Id.* ¶ 56. The Complaint claims CSI HR disciplined Brown by prohibiting him from working on the same assignment with Ms. Rivera, but Brown still ended up working with Plaintiff. *Id.* ¶ 57, 71, 74

The third incident occurred around "two weeks" later when CSI assigned Plaintiff to a hospital in Georgia where Brown was also working. *Id.* ¶¶ 57-58. When Ms. Rivera informed Clough of the situation, the HR VP allegedly "professed ignorance" and claimed Ms. Rivera had never informed HR of the prior incidents. *Id.* ¶ 63. During the Georgia assignment, Ms. Rivera claims she received unsolicited pictures of naked men and recognized one individual as David Dar ("Dar"), a friend of Brown. *Id.* ¶ 66. After reporting the photos, CSI HR told Plaintiff it had already taken disciplinary actions against Brown but was unable to locate Dar. *Id.* ¶ 70.

The fourth and final incident occurred on or about January 2, 2023, when Plaintiff "began getting phone calls from unknown women calling her offensive names and threatening bodily harm." *Id.* ¶ 77. The Complaint alleges these calls

3

were likely from Brown's "wife/girlfriend" who also worked for CSI. *Id.* ¶ 82. When Plaintiff reported these calls to HR, Clough confirmed the identity of one of the callers but refused to tell Ms. Rivera "because [] the person is 'important to CSI.'" *Id.* ¶ 83.

On March 19, 2023, CSI terminated Ms. Rivera's employment with the company. *Id.* ¶ 86. Plaintiff claims this termination occurred "shortly after" Clough told her "how difficult it will be for [Plaintiff] moving forward in the company because [Plaintiff] had reported Brown for sexual harassment." *Id.* ¶ 87.

On or about September 19, 2023, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 6. After exhausting her remedies with the EEOC, Ms. Rivera filed the instant Complaint. *Id.* ¶ 7. It alleges sex discrimination and retaliation under Title VII of the Civil Rights Act of 1991 ("Title VII") and the Florida Civil Rights Act ("FCRA"). *Id.* ¶¶ 88–103. Defendant CSI moves to dismiss all counts in the Complaint, arguing that Plaintiff's discrimination claims are untimely and fail to allege a claim upon which relief can be granted. *See* Dkt. 14.

## DISCUSSION

For the reasons discussed below, the Court finds Plaintiff has sufficiently pled all counts in her complaint. Defendant's motion to dismiss for failure to state a claim is denied.

4

## I.   Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In assessing the legal sufficiency of a complaint's allegations, the Court applies the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, conclusory allegations, unwarranted deductions of facts, and legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

## II.     Claims Pursuant to Title VII and the FCRA

Plaintiff raises four counts in the Complaint: Count I—sex discrimination under Title VII; Count II—retaliation under Title VII; Count III—sex discrimination in violation of the FCRA; and Count IV[1]—retaliation in violation of the FCRA.[2]

Defendant filed a motion to dismiss all counts, arguing that "(1) Plaintiff's discrimination claims are statutorily barred as untimely; (2) Plaintiff cannot state a claim for discrimination based on her sex because she fails to allege facts to support her contention that she was treated less favorably than a similarly situated individual outside her protected class; and (3) Plaintiff cannot state a retaliation claim because she fails to allege facts to support that she engaged in protected activity or that any alleged protected activity was the but-for cause of her termination." Dkt. 14 at 1–2. The Court will address each argument in turn.

### a. Counts I and III- Timeliness of Plaintiff's Hostile Work Environment Claims

Defendant first contends the discrete discrimination acts raised by Plaintiff are not actionable because they arose outside the 300-day limitations period. Dkt. 14 at

---

[1] In Plaintiff's Complaint, Count IV is mistakenly numbered as "Count VI." *See* Dkt. 1 at 17.

[2] Plaintiff makes parallel sex discrimination and retaliation claims under the Florida Civil Rights Act of 1992. *See* Fla. Stat. § 760.10. The FCRA is modeled after Title VII, so prior courts have found claims brought under both statutes are analyzed under the same framework. *See Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing Florida case law). Accordingly, Plaintiff's state-law claims do not require a separate discussion because the outcome is the same under federal law. *See Alvarez v. Royal Atl. Dev., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010); *Byrd v. BT Foods, Inc.*, 948 So. 2d 921, 925 (Fla. 4th DCA 2007).

5. As a general matter, Title VII prohibits an employer from discriminating against an individual "with respect to [her] compensation, terms, conditions, or privileges of employment" because of the individual's sex. 42 U.S.C. § 2000e-2(a)(1). This prohibition encompasses various forms of sexual harassment, including discrete acts of discrimination and a hostile work environment claim. *See AMTRAK v. Morgan*, 536 U.S. 101, 116 (2002) (noting Title VII's prohibition on discrimination includes a hostile work environment claim).

Turning to timeliness, a plaintiff must exhaust all administrative remedies before bringing a suit under Title VII. *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001). The plaintiff initiates the administrative process by timely filing a charge of discrimination. See 42 U.S.C. § 2000e-5(b); *Wilkerson*, 270 F.3d at 1317. A plaintiff in Florida must file an administrative charge of discrimination within 300 days of the last discriminatory act. *See* 42 U.S.C § 2000e-5(e)(1); *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1238 (11th Cir. 2004) ("For a charge to be timely in Florida, a deferral state, it must be filed not more than 300 days after the alleged unlawful employment practice occurred."); *Moore v. San Carlos Park Fire Prot. & Rescue*, 808 F. App'x 789, 795 n.6 (11th Cir. 2020) (same).

However, the timeliness deadlines for discrete acts of discrimination and hostile work environment claims are different. Discrete discriminatory acts are "not actionable if time-barred, even when they are related to acts alleged in timely filed

charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. A discrete act can be "easy to identify" and includes "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

On the other hand, a hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice." *Id.* at 117. Even if some component acts of the hostile work environment fall outside the statutory period, it does not matter so long as "an act contribut[ing] to the claim occurs within the filing period, [and thus] the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* A hostile work environment claim may also be a combination of non-discrete acts and discrete acts. *See Chambless v. Louisiana-Pacific Corp.*, 481 F.3d 1345, 1350 (11th Cir. 2007) ("Where the discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim."). In instances "where discrete and non-discrete acts make up a hostile work environment claim, the 'pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim.'" *Moore*, 808 F. App'x at 796 (quoting *Chambless*, 481 F.3d at 1350).

Here, Plaintiff filed her charge of discrimination with the EEOC on September 19, 2023. Dkt. 1 ¶ 6. As such, any alleged discrete acts of discrimination must have occurred on or after November 23, 2022, to be timely under Title VII. Defendant contends Plaintiff's allegations are time-barred because Brown's inappropriate conduct occurred on or about March 2022, and there is nothing in the Complaint that indicates such conduct continued beyond that period of time. Dkt. 14 at 6–7. However, Defendant mischaracterizes Counts I and III as claims for discrete acts of discrimination. As the Complaint plainly states, Plaintiff's allegations about Brown's (and other CSI employees') conduct are "allegations regarding the *sexually hostile environment*." Dkt. 1 at 3 (emphasis added). The Court, viewing the Complaint in the light most favorable to Plaintiff, finds Ms. Rivera is making a hostile work environment claim. Because Plaintiff is raising a hostile work environment claim, the Court's analysis on timeliness shifts to "whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Moore*, 808 F. App'x at 796 (citation omitted).

i. Plaintiff's Untimely Allegations are Sufficiently Related to her Timely Adverse Act

As currently pled, the Complaint only seems to raise two timely adverse acts—the January 2, 2023, incident where Plaintiff began receiving harassing phone calls from an unknown individual and Ms. Rivera's termination on March 19, 2023. Dkt. 1 ¶¶ 77, 86-87. It is possible Plaintiff is raising additional timely acts within the

9

statutory period, but the Court cannot tell because the Complaint only uses vague terms such as "several weeks later," "the next day," "the following day," "a short while later," "on Monday," "the following Friday," and "around this time." Dkt. 1 ¶¶ 27, 42, 48, 55, 56, 58, 66.  While Plaintiff's two alleged acts are timely, these adverse employment actions alone do not demonstrate a hostile work environment. As such, this Court must determine whether any of the untimely acts in the Complaint are "sufficiently related" so that they "may fairly be considered part of the same [hostile work environment] claim." *Moore*, 808 F. App'x at 797 (quoting *Chambless*, 481 F.3d at 1350).

Here, the allegations in the Complaint are so temporally vague that it is difficult for the Court to determine whether Plaintiff's termination is "sufficiently related" to any of the untimely harassment allegations committed in March 2022. *Chambless*, 481 F.3d at 1350; *see also Morgan*, 536 U.S. at 120 ("A court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period."). The Complaint does, however, add two important sentences that allows it to survive a motion to dismiss. Plaintiff asserts CSI's HR told her "how difficult it will be for her moving forward in the company *because she had reported Brown for sexual harassment*," and termination occurred "shortly after" this meeting with HR. Dkt. 1 ¶¶ 85, 87 (emphasis added). With these two

10

sentences, the Court finds the prior instances of harassment are "sufficiently related" to at least one timely adverse act (i.e., Plaintiff's termination), such that they support the same hostile work environment claim. Accordingly, Counts I and III are not time-barred under Rule 8(a)'s low bar for notice pleading.

　　　　*b.  Counts I and III- Failure to State a Claim for Sex Discrimination.*

　　　　Next Defendant argues Plaintiff has failed to properly allege claims for sex discrimination under Title VII and the FCRA. The Court disagrees and finds the Complaint sufficiently states a claim for sex discrimination.

　　　　As discussed previously, sexual harassment is a form of discrimination that Title VII prohibits, and a hostile work environment is a recognized form of sexual harassment. *See Morgan*, 536 U.S. at 116 (stating the discrimination prohibited by Title VII includes the creation of a hostile work environment). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment." *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012). To show a hostile work environment, a plaintiff must allege that (1) she belongs to a protected class; (2) she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) she was harassed based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the terms of her employment; and (5) that her employer

11

was responsible under either a theory of vicarious or direct liability. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1258 (11th Cir. 1999).

The "severe or pervasive" element requires the plaintiff to prove the work environment is both subjectively and objectively hostile. *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1249 (11th Cir. 2014). "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, . . . [and] the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quotation marks omitted). A court can look to several factors when considering whether the harassment was objectively severe or pervasive: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Sutherland v. Boehringer-Ingelheim Pharm., Inc.*, 700 F. App'x 955, 960 (11th Cir. 2017) (quoting *Mendoza*, 195 F.3d at 1246).

Here, the Court, accepting the alleged facts in the Complaint as true, finds Plaintiff's claims are sufficient under the above standard. Ms. Rivera has alleged she is a woman who was subjected to workplace harassment during her one year of employment with CSI. Dkt. 1 ¶ 11. The Complaint outlines at least four instances of unwelcome sexual harassment by coworkers over the course of Plaintiff's

employment. *See id.* ¶¶ 15-82. More specially, the March 2022 allegations involving Brown can be classified as either sexual advances or requests for sexual favors. *See Id.* ¶¶ 15-34. Plaintiff's allegations also make it clear that the harassment from Brown and other coworkers was due to her sex. *See id.* ¶¶ 15, 21, 32-34. Further, Plaintiff asserts CSI was aware of the sexual harassment based on several meetings Ms. Rivera had with CSI's HR department. *See id.* ¶¶ 56, 70, 83.

Finally, while the "severe or pervasive" element is a closer call, Plaintiff still meets the exceedingly low threshold of sufficiency to survive a motion to dismiss. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.*, 711 F.2d 989, 995 (11th Cir. 1983). While the conduct alleged does not meet all the objective factors, much of Brown's conduct (before being removed from assignments with Plaintiff) can be deemed to be frequent and some alleged instances of harassment can be reasonably viewed as physically threatening and humiliating. *See Id.* ¶¶ 15-34, 66, 77. Accordingly, Ms. Rivera may proceed with a sexually hostile work environment claim under Counts I and III.

### c. Counts II and IV- Failure to State a Claim for Retaliation

The Court also rejects Defendant's final argument that Plaintiff failed to sufficiently state a claim for retaliation under Title VII and the FCRA. To establish a *prima facie* case under Title VII for retaliation, a plaintiff is required to show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse

employment action; and (3) there was a causal relation between the protected activity and the adverse action. *See Terrell v. Paulding Cty.*, 539 F. App'x 929, 933 (11th Cir. 2013) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)).

Concerning the causation element, a plaintiff must allege her "protected activity was a but-for cause" of her termination. *Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1338 (11th Cir. 2023); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."). In other words, "a plaintiff must prove that had she not complained, she would not have been fired." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018)). "The burden of causation can [also] be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, "mere temporal proximity, without more, must be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

Here, elements one and two have been sufficiently pled in the Complaint. Plaintiff engaged in statutorily protected activity by reporting instances of sexual harassment to CSI's HR department, and Ms. Rivera suffered an adverse employment action when her employment was terminated by CSI. Dkt. 1 ¶¶ 56, 69,

82, 86; *see also Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) ("It is undisputed that [plaintiff] has met the first two elements of his prima facie case of retaliatory discrimination, i.e., that he engaged in statutorily protected conduct (reporting alleged race discrimination) and suffered an adverse employment action (termination).").

At this stage in the proceeding, the Court also finds the Complaint sufficiently alleged some causal relationship between the protected activity and adverse action. Plaintiff claims Defendant terminated her "shortly after" an HR employee told her that "reporting [] Brown would make it difficult for her to continue working at CSI." *Id.* ¶ 87. Put another way, had Ms. Rivera not complained about Brown's conduct, she would not have been fired. However, the Court notes Defendant's arguments regarding the "temporal proximity" between Brown's conduct and Plaintiff's termination are an important issue to be explored during discovery. *See Thomas*, 506 F.3d at 1364 ("[I]n the *absence of other evidence* tending to show causation, if there is a *substantial delay* between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law.") (emphasis added). Accordingly, Counts II and IV have sufficiently stated a claim for retaliation under Title VII and the FCRA.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that Defendant's Motion to Dismiss Plaintiff's Complaint, Dkt. 14, is **DENIED.** The Defendant must file a responsive pleading within 14 days of the entry of this Order.

**DONE AND ORDERED** at Tampa, Florida, on September 23, 2024.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record